IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOROTHY DUDLEY**<br><br>        Plaintiff,<br><br>   v.<br><br>**RICHARD FOLLO,**<br>**DOMENICK MAGGI, and**<br>**PRECISION AIR DESIGNS, INC.**<br><br>        Defendants. | CIVIL ACTION NO. _____ |

## COMPLAINT

Plaintiff Dorothy Dudley ("**Mrs. Dudley**" or "**Plaintiff**") files this Complaint against Defendants Richard Follo ("**Follo**" or "**Defendant Follo**"), Domenick Maggi ("**Maggi**" or "**Defendant Maggi**"), and Precision Air Designs, Inc., a Pennsylvania corporation with its principal place of business at 25 N. Bartram Ave, Glenolden, PA 19036 (the "**Company**" and sometimes collectively with Follo and Maggi, the "**Defendants**" ).  In support thereof Mrs. Dudley avers as follows:

## INTRODUCTION

1.     This case arises out of a company and its shareholders' and officers' egregious conduct in violation of fiduciary duties and breach of contract.

## PARTIES

2.     Plaintiff Mrs. Dudley is an adult individual residing at 9 Watson Lane, Middletown, DE 19709, and the widow and legal heir of the late Robert E. Dudley III ("**Mr. Dudley**").

3. Defendant Follo is an adult individual residing at 3413 Lewis Road, Newtown Square, PA 19073 and, at the time of the actions that form the basis of this Complaint, was the Vice President of the Company.

4. Defendant Maggi is an adult individual residing at 12 Rolling Road, Stratford, NJ 08084, at the time of the actions that form the basis of this Complaint, was the President of the Company.

5. Defendant Precision Air Designs, Inc. is a Pennsylvania corporation with a principal place of business at 25 N Bartram Ave, Glenolden, PA 19036.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332. There is complete diversity of citizenship between Plaintiff and the Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

A.    The Stockholders Agreement

8. Mr. Dudley was the owner of Environmental Air Services, Inc., a sheet metal fabrication and installation business ("**Environmental Air**").

9. Pursuant to an Asset Purchase Agreement, dated December 9, 2015, Mr. Dudley, the Defendant, and Mr. William Massaro ("**Massaro**") formed the Company to purchase the assets of Environmental Air.

10. Mr. Dudley contributed $100,000 plus $200,000 of the assets and goodwill of Environmental Air to the Company in exchange for 40 shares of common stock, par value $1.00 per share of the Company (the "**Shares**"), equal to 40% ownership of the Company.

11.    Follo contributed $30,000 in exchange for 4.5 Shares, equal to 4.5% ownership of the Company.

12.    Mr. Dudley financed Maggi's $15,000 contribution to the Company in exchange for 4.5 Shares to Maggi, equal to 4.5% ownership of the Company.

13.    The remaining 50.5 Shares, equal to 50.5% ownership of the Company was and is owned by Massaro.

14.    Mr. Dudley, Follo, Maggi, and Massaro entered into a Stockholders Agreement and an Addendum to Stockholders Agreement, dated December 9, 2015 (collectively, the "**Stockholders Agreement**"), providing, *inter alia*, for both the management of the Company and the terms and conditions for any future transfer of Shares. A true and correct copy of the Stockholders Agreement is attached as **Exhibit "1"** hereto and incorporated herein.

15.    Pursuant to the Stockholders Agreement, Maggi had the exclusive right to purchase Mr. Dudley's Shares on December 5, 2020 at their value as of that date, not to exceed $500,000.00. *Id.*, §11.B.

16.    Under Section 17.(A.) of the Stockholders Agreement, the Shares to be purchased by Maggi were to be held by an escrow agent until payment in full was received and the rights of ownership remained with Mrs. Dudley as security for Maggi's obligations. So long as no default occurred, Maggi retained the right to vote the Shares. *Id*., §17.(A.).

17.    In addition, all dividends declared on the Shares were to be applied towards the payment obligation. *Id*.

**B.    The Financing Agreement.**

18.    On April 9, 2018, Mr. Dudley and Maggi entered into an Owner Financing Agreement (the "**Financing Agreement**") which laid out the terms under which Mr. Dudley would

finance Maggi's purchase of Mr. Dudley's Shares. A true and correct copy of the Financing Agreement is attached as **Exhibit "2"** hereto and incorporated herein.

19.     Under the Financing Agreement, Maggi was to make annual payments every December, commencing December 5, 2021.  Id.

**C.     Sale of Mr. Dudley's Shares to Follo and Maggi.**

20.     On December 9, 2020, Mr. Dudley retired from the Company and he, Maggi, Follo, and the Company entered into an Agreement for Sale and Purchase of Shares (the "**Original Purchase Contract**") for the purchase by Maggi and Follo of 20 Shares each from Mr. Dudley (the "Purchase"). Under the terms of the Original Purchase Contract, Maggi and Follo agreed to pay $213,000.00 (the "**Purchase Price**") each for their 20 Shares, for a total purchase price of $426,000.00 (the "**Total Purchase Price**").  The Purchase Price was to be paid in installments, based on 50% of the profits of the Company attributable to each of Follo and Maggi's 20 Shares, respectively.  No time limit was placed on the payment of the Purchase Price.  A true and correct copy of the Original Purchase Contract is attached as **Exhibit "3"** hereto and incorporated herein.

21.     In addition, upon any sale of transfer of the Shares by Maggi or Follo, the Purchase Price, less any amounts previously paid, was due in full. *Id.*, §5.

22.     After the Purchase, Follo. Maggi, and Massaro entered into an Amended and Restated Stockholders Agreement (the "**Amended Stockholders Agreement**") . Under Section 3 and 4 of the Amended Stockholders Agreement, Defendant Maggi was elected President, Defendant Follo continued as Vice-President, and Maggi and Follo continued as directors of the Company. A true and correct copy of the Amended Stockholders Agreement is attached as **Exhibit "4"** hereto and incorporated herein.

23.    Mr. Dudley was hospitalized shortly after selling his 40% interest in the Company and died in April 2021.  Mrs. Dudley is Mr. Dudley's lawful heir.

**D.    Subsequent Resale of Shares by Follo.**

24.    Although contractually obligated and despite reaping the benefits of owning Mr. Dudley's 20 Shares, and even though Follo should have paid Mrs. Dudley $40,499 on the Company's net income of $404,990.40 in 2020, Follo made no payments to Mrs. Dudley in 2021. A true and correct copy of the Company's Revised Financial Statement for year ended December 31, 2020 is attached as **Exhibit "5"** hereto and incorporated herein.

25.    On February 14, 2022, Maggi sent an email to Mr. Massaro, the majority shareholder, in which Maggi states that he is purchasing Follo's 4.5 Shares and that the deal has been returned to the arrangement originally contemplated in the Stockholders Agreement, that is, that Maggi purchased all 40 Shares from Mr. Dudley's. Maggi states: "Return the shares to how they were originally supposed to be after [Mr. Dudley's] retirement, and I'll buy his 4.5% for the evaluation we gave Rob for his 40%."  Maggi then goes on to confirm the Purchase Price of $426,000.00.  A true and correct copy of the Maggi-Massaro email is attached as **Exhibit "6"** hereto and incorporated herein.

26.    On February 15, 2022, the Company's attorney, writes, in an email to Massaro, that the "deal is that [Maggi] will pay [Follo] $47,925.00 on the same terms upon which the Dudley shares were purchased in 2021…".  A true and correct copy of the Company's Attorney email is attached as **Exhibit "7"** hereto and incorporated herein.

27.    On February 22, 2022, Follo, Maggi, and the Company entered into the Agreement for Sale and Purchase of Shares (the "**Resale Contract**") in which Follo sold all of his 24.5 Shares

to Maggi, including the 20 Shares purchased from Mr. Dudley for $213,000 for $47,925.[1] (the "**Resale**").  A true and correct copy of the Resale Contract  is attached as **Exhibit "8"** hereto and incorporated herein.

28.     The Resale Contract  between Maggi and Follo, was not only contrary to the terms described in the emails referenced above, it was inconsistent within its own terms.  Follo apparently sold 24.5 Shares but the purchase price ($47,925.00) is based only on the value of Follo's original 4.5 Shares and the Resale Contract  states in one part that Maggi is to pay Follo based on "the **twenty-four and on half (24.5) shares** purchased representing **4.5% interest** in profits of [the Company]". [emphasis added], but then later in the same Section states, "For example, if the profits on a **four- and one-half percent interest**…" [emphasis added] In addition, the Resale Contract , in relevant parts, duplicates the Original Purchase Contract. *See* Resale Contract , *supra*, §5.

29.     As stated above, under the terms of the Original Purchase Contract, payment in full was due by Follo upon the Resale. Mrs. Dudley should have been paid $213,000.00 on February 22, 2022, but she was not. *See* Original Purchase Contract, *supra* §5.

30.     To date Mrs. Dudley has never received any money from Defendant Follo.

31.     Not only was Mrs. Dudley not paid, she was not even informed nor was she aware of the Resale until January, 2026, less than six (6) months ago and more than four (4) years after the Defendants entered into the Resale Contract.

---

[1] (Curiously, the purchase price of $47,925 for 4.5 Shares is the same as $213,000 for 20 Shares, the Original Purchase Price. (4.5 Shares / $47,925 = 20 Shares / $213,000).

**E.      Actions of Maggi.**

32.      Although contractually obligated to pay for the 20 Shares he purchased and despite reaping the benefits of owning Mr. Dudley's 20 Shares, and even though Maggi should have paid Mrs. Dudley $40,499 on the Company's net income of $404,990.40 in 2020, Maggi did not make any payments to Mrs. Dudley in 2021. *See* Company's Revised Financial Statement for year ended December 31, 2020, *supra*, Income Statement, Pgs. 6-7.

33.      And despite reaping the benefits of owning 49.5% of the Company, Maggi made no payments to Mrs. Dudley in 2022, even though the Company had net income of $407,845 in 2021, and Maggi should have paid Mrs. Dudley an additional $40,784.50. A true and correct copy of the Company's Tax Return for year ended December 31, 2021 is attached as **Exhibit "9"** hereto and incorporated herein.

34.      More than three (3) years after purchasing the initial 20 Shares and more than a year after taking possession of the remaining 20 Shares, and only after being contacted by Mrs. Dudley, Defendant Maggi finally made payments in 2023, totaling $82,000.  Thereafter, he paid $32,000 in 2024, and $10,000 in 2025, for a total of $124,000 over the course of five (5) years. Defendant Maggi has not made any payments since March 2025, has not made any payments for the additional 20 Shares he acquired in 2022, has never stated that he is obligated to pay Mrs. Dudley for his acquisition of 40 Shares, and has never provided an accounting to Mrs. Dudley to support what little payments he has made.

35.      In January 2026, Mrs. Dudley received a letter from Maggi's attorney, Liam Braber, Esq. of Charlson Braber McCabe & Denmark, attorneys at law, titled "RE: ACCOUNTING AND STATEMENT FOR DOMENICK MAGGI AND NOTICE TO CEASE AND DESIST" (the "Attorney Letter"), in which confirmed that Defendant Maggi purchased 20 Shares for $213,000.

A true and correct copy of the Maggi Attorney Letter is attached as **Exhibit "10"** hereto and incorporated herein.[2]

36.    Mr. Braber's letter states, in relevant part, that the Purchase Price was to be paid "solely out of the profits of the 20 purchased shares" and that payments to date for the 20 Shares total $124,000 and provides an accounting therein. *Id.*, ⁋**Third** 3) and Schedule of Payments to Dudley 2021-Present.

### F.   Notification of Defendants.

37.    After receiving the Attorney Letter, counsel for Mrs. Dudley sent a notice of default and requested cure ("**Follo Notice**") to Defendant Follo and the Company and another to Defendant Maggi and the Company ("**Maggi Notice**"). A true and correct copy of each of the Follo Notice and Maggi Notice are attached as **Exhibit "11-1"** and "**Exhibit 11-2**" hereto and incorporated herein.

### G.    Actions of the Company.

38.    The Company was a party to the Stockholders Agreement. Under the terms thereof, the Shares were to be held in escrow until final payment was made in full and then delivered to the purchaser. *See*, Exhibit 1, §17.(A), *supra*.

39.    The Company was also party to the Original Purchase Contract. *See*, Exhibit 3, §5, *supra*.

40.    Upon information and belief, instead of having the Shares endorsed and held in escrow, the Company canceled Mr. Dudley's Shares and issued a new certificate for 20 Shares to each of Defendant Maggi and Follo to be held in their respective possessions.

---

[2] Although the letter contains, at the end, the phrase "This letter reserves all rights of Domenick Maggi, without admission or prejudice," it is not an attempt to resolve a dispute or reach a settlement.  Moreover, it is being introduced in the instant matter only to confirm that Defendant Maggi has paid $124,000 to Mrs. Dudley on account of the $213,000 Purchase Price for the 20 Shares purchased by Maggi in 2020.

41. The Company was also party to the Resale Contract. *See*, Exhibit 8, §5, *supra.*

42. Upon information and belief, when Follo sold the 20 Shares to Maggi, the Company again canceled the  Shares and issued new certificate for 20 Shares to Maggi to be held in his possession.

43. The Company owed an obligation to Mrs. Dudley, as a minority shareholder; at the least, the Company should have notified Mrs. Dudley of the Resale so that she knew that Defendant Follo's pay on sale clause under the Original Purchase Contract had been triggered.  Mrs. Dudley has spent more than four (4) years wondering when, if ever, she would be paid with no information.

44. The Company, by entering into the Original Purchase Contract and the Resale Contract , breached its fiduciary obligations to Mrs. Dudley, but it also allowed and enabled Follo and Maggi to breach their contractual obligations and fiduciary duties to Mrs. Dudley.

**CAUSE OF ACTION AS AGAINST DEFENDANT FOLLO:**

**<u>COUNT I – BREACH OF CONTRACT – ORIGINAL PURCHASE CONTRACT</u>**

45. Plaintiff repeats the foregoing averments as if fully set forth herein.

46. A valid and enforceable contract exists of which Defendant Follo is a party.  *See*, Exhibit 3, *supra*.

47. Under the terms of the Original Purchase Contract, Follo agreed to pay Mrs. Dudley annually based on the profits of the Company. *Id.*, §5.

48. Defendant Follo breached the terms of the Original Purchase Contract by failing to pay Mrs. Dudley based on the profits of the Company.

49. Under the terms of the Original Purchase Contract, Follo agreed to pay the balance of the Purchase Price in full upon any subsequent transfer of the 20 Shares. *Id*.

50. Defendant Follo breached the terms of the Original Purchase Contract by failing to pay Mrs. Dudley the full amount of the Purchase Price when he resold the Shares to Defendant Maggi.

51. As a result of Defendant Follo's breach of contract, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

## COUNT II – BREACH OF CONTRACT - STOCKHOLDERS AGREEMENT

52. Plaintiff repeats the foregoing averments as if fully set forth herein.

53. A valid and enforceable Shareholder Agreement existed in which Defendant Follo was a party and signatory. *See* Stockholders Agreement, *supra*.

54. Under the terms of the Stockholders Agreement, the Shares were required to be delivered to and held by an escrow agent until payment in full, as security therefor. *Id.*, §17(A.).

55. Under the terms of the Stockholders Agreement, in addition to legal remedies, Mrs. Dudley would have had the authority to notify the escrow agent of a default upon which Defendant Follo would have had 10 days to cure the default, and failing that, the Shares would have been delivered to Mrs. Dudley *Id.*, §17(B.).

56. Under the terms of the Stockholders Agreement, upon delivery of the Shares to her, Mrs. Dudley would have been authorized and empowered, *inter alia*, to sell a sufficient amount of the Shares to receive the Purchase Price. *Id.*, §17(C.).

57. Defendant Follo failed to comply with the terms of the Stockholders Agreement by failing to have an escrow agent hold the Shares thereby depriving Mrs. Dudley of her rights thereunder.

58. As a result of Defendant Follo's breach of contract, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

10

## COUNT III - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**59.**     Plaintiff repeats the foregoing averments as if fully set forth herein.

**60.**     Defendant Follo failed to adhere in good faith to his contractual obligations under both the Original Purchase Contract and the Stockholders Agreement and further failed to deal fairly with Mrs. Dudley, engaging in conduct that interfered with Mrs. Dudley's right of payment under the Original Purchase Contract and right of ownership under the Stockholders Agreement.

**61.**     As a result of Defendant Follo's breach of the implied covenant of good faith and fair dealing, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

**CAUSES OF ACTION AS AGAINST DEFENDANT MAGGI:**

## COUNT IV – BREACH OF CONTRACT - ORIGINAL PURCHASE CONTRACT

**62.**     Plaintiff repeats the foregoing averments as if fully set forth herein.

**63.**     A valid and enforceable contract exists, of which Defendant Maggi is a party.  *See* Original Purchase Contract, *supra*.

**64.**     Under the terms of the Original Purchase Contract, Maggi agreed to pay Mrs. Dudley annually based on the profits of the Company. *Id.*, §5.

**65.**     Defendant Maggi breached the terms of the Original Purchase Contract by failing to pay Mrs. Dudley annually based on the profits of the Company.

**66.**     As a result of Defendant Maggi's breach of contract, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

## COUNT V – BREACH OF CONTRACT - STOCKHOLDERS AGREEMENT

**67.**     Plaintiff repeats the foregoing averments as if fully set forth herein.

**68.**     A valid and enforceable Shareholder Agreement existed in which Defendant Maggi were a party and signatory.  *See* Stockholders Agreement, *supra*.

11

69.     Under the terms of the Stockholders Agreement, the initial 20 Shares Defendant Maggi purchased from Mr. Dudley were required to be delivered to and held by an escrow agent until payment in full, as security therefor. *Id.*, §17(A.).

70.     Under the terms of the Stockholders Agreement, the additional 20 Shares Defendant Maggi was given by Mr. Follo, at the very minimum, should also have been delivered to and held by an escrow agent until payment in full, as security therefor. *Id.*, §17(A.).

71.     Under the terms of the Stockholders Agreement, in addition to legal remedies, Mrs. Dudley would have had the authority to notify the escrow agent of a default upon which Defendant Maggi would have had 10 days to cure the default, and failing that, the Shares would have been delivered to Mrs. Dudley *Id.*, §17(B.).

72.     Under the terms of the Stockholders Agreement, upon delivery of the Shares to her, Mrs. Dudley would have been authorized and empowered, *inter alia*, to sell a sufficient amount of the Shares to receive the Purchase Price. *Id.*, §17(C.).

73.     Defendant Maggi has failed to comply with the terms of the Stockholders Agreement by failing to have an escrow agent hold either the initial 20 Shares or the additional 20 Shares thereby depriving Mrs. Dudley of her rights thereunder.

74.     As a result of Defendant Maggi's breach of contract, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

## COUNT VI – BREACH OF CONTRACT – RESALE CONTRACT

75.     Plaintiff repeats the foregoing averments as if fully set forth herein.

76.     Although Mrs. Dudley is not a party to the Resale Contract  she is undoubtedly an intended beneficiary.  Because Maggi was not paying Follo for the 20 Shares it seems likely that he was assuming the obligation to pay Mrs. Dudley.  This assumption is bolstered by the email

12

from Maggi to Massaro and from the attorney to Massaro. *See* Maggi-Massaro email and Attorney email, *supra*.

77.    Defendant Maggi breached the terms of the Resale Contract  by failing to pay Mrs. Dudley annually based on the profits of the Company.

78.    As a result of Defendant Maggi's breach of contract, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

## COUNT VII - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

79.    Plaintiff repeats the foregoing averments as if fully set forth herein.

80.    Defendant Maggi failed to adhere in good faith to their contractual obligations under both the Original Purchase Contract and the Stockholders Agreement and further failed to deal fairly with Mrs. Dudley, engaging in conduct that interfered with Mrs. Dudley's right of payment under the Original Purchase Contract and the Resale Contract, and her right of ownership under the Stockholders Agreement.

81.    As a result of Defendant Maggi's breach of the implied covenant of good faith and fair dealing, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

## COUNT VIII – UNJUST ENRICHMENT

82.    Plaintiff repeats the foregoing averments as if fully set forth herein.

83.    By entering into the Resale Contract , Defendant Maggi took ownership from Follo of the 20 Shares Follo purchased from Mr. Dudley, receiving a financial advantage.

84.    Defendant Maggi was well aware of the benefit he was receiving and has accepted and reaped the benefit of ownership by receiving, *inter alia*, distributions from the Company based on his ownership of 40 Shares.

13

85.     It is inequitable and would be unjust for Defendant Maggi to retain the benefit of the additional 20 Shares that rightfully belong to Mrs. Dudley.

## COUNT IX - TORTIOUS INTERFERENCE WITH CONTRACT

86.     Plaintiff repeats the foregoing averments as if fully set forth herein.

87.     A binding contract existed between Mrs. Dudley and Defendant Follo.

88.     Defendant Maggi, as the third party to the Original Purchase Contract was well aware of the terms thereof.

89.     Defendant Maggi intentionally induced a breach or disrupted performance of the contract between Defendant Follo and Mrs. Dudley without justification.

90.     As a result of Defendant Maggi's tortious interference with the contract between Follo and Mrs. Dudley, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

## COUNT X – AIDING AND ABETTING

91.     Plaintiff repeats the foregoing averments as if fully set forth herein.

92.     Defendant Maggi, as a party to the Original Purchase Contract, knew that the Resale to him by Follo of the additional 20 Shares triggered payment in full by Follo.

93.     Defendant Maggi knew that under the Resale Contract he was only required to pay for 4.5 Shares and that the additional 20 Shares were simply "given" to him.

94.     Defendant Maggi did not inform Mrs. Dudley of the Resale even though he knew she was not aware. In fact, Defendant Maggi never informed Mrs. Dudley that he had acquired the additional 20 Shares, in violation of his duty to her.

95.     As a result of Defendant Maggi's tortious conduct, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

14

**CAUSES OF ACTION AS AGAINST MAGGI AND FOLLO:**

### COUNT XI – BREACH OF FIDUCIARY DUTY

96.     Plaintiff repeats the foregoing averments as if fully set forth herein.

97.     At all times when the actions occurred, Defendant Maggi was the President of the Company and Defendant Follo was the Vice President of the Company and both of them were directors of the Company.

98.     As officers and directors of the Company, each of Maggi and Follo had a fiduciary duty to Mrs. Dudley, including a duty of loyalty and a duty of care and fair dealing.

99.     As a result of each of Maggi and Follo's breach of their fiduciary duties, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

### COUNT XII – SELF DEALING

100.     Plaintiff repeats the foregoing averments as if fully set forth herein.

101.     Upon information and belief, upon the purchase of Mr. Dudley's 40 Shares and the execution of the Amended Stockholders Agreement on January 1, 2021, each of Follo and Maggi were given substantial increases in salary plus bonuses.

102.     Upon information and belief, Defendants Maggi and Follo each took increased salaries and bonuses knowing such increases would substantially lower the Company's profits and decrease any amounts owed Mrs. Dudley.

103.     As a result of Defendants Follo and Maggi's self-dealing, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

### COUNT XIII – UNJUST ENRICHMENT

104.     Plaintiff repeats the foregoing averments as if fully set forth herein.

15

**105.** Upon information and belief, each of Defendant Follo and Maggi were given substantial raises in salary plus bonuses, *inter alia*, so that they would have funds available to make the required payments for the 40 Shares.

**106.** Despite the increased salaries and bonuses and the profitability of the Company, neither Defendant Follo nor Maggi paid Mrs. Dudley in 2021 or 2022.

**107.** As a result of Defendants Follo and Maggi's self-dealing, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

<u>**COUNT XIV – CONVERSION**</u>

**108.** Plaintiff repeats the foregoing averments as if fully set forth herein.

**109.** Defendants Follo and Maggi were notified of their default and Mrs. Dudley's claim of immediate right of ownership and possession of the Shares, both under the Stockholders Agreement, the Original Purchase Contract, and the Resale Contract.

**110.** To date, neither Follo nor Maggi have returned the Shares to Mrs. Dudley, depriving Mrs. Dudley of her property rights.

**111.** As a result of Defendants Follo and Maggi's wrongful conversion of Mrs. Dudley's property rights, she has suffered damages, including, but not limited to financial losses.

**112. CAUSES OF ACTION AS AGAINST THE COMPANY:**

<u>**COUNT XV – AIDING AND ABETTING**</u>

**113.** Plaintiff repeats the foregoing averments as if fully set forth herein.

**114.** The Company, as a party to the Original Purchase Contract, knew that the Resale by Follo to Maggi of the additional 20 Shares triggered payment in full by Follo.

**115.** The Company knew or should have known that under the Resale Contract Maggi was only required to pay for 4.5 Shares and that the additional 20 Shares were simply "given" to him.

**116.** The Company did not inform Mrs. Dudley of the Resale even though it knew, or should have known, that she was not aware.

**117.** As a result of the Company's tortious conduct, Mrs. Dudley has suffered damages, including, but not limited to financial losses.

<u>**REQUEST FOR RELIEF**</u>

**WHEREFORE,** Plaintiff, Mrs. Dorothy Dudley, respectfully requests the following be awarded to her:

**AS TO DEFENDANT FOLLO:**

a) Judgment under the Original Purchase Contract in the amount of $213,000;

b) Prejudgment interest from December 2021;

c) Post-judgment Interest;

d) Punitive damages;

e) Rescission of the Resale Contract and the Original Purchase Contract and return of the 20 Shares;

f) All costs incurred in this action;

g) Attorney's fees;

h) Such other and further relief as this Court may deem proper.

**AS TO DEFENDANT MAGGI:**

a) Judgment under the Original Purchase Contract in the amount of $213,000;

b) Prejudgment interest from December 2021;

c)      Judgment under the Resale Contract  in the amount of $213,000;

d)      Prejudgment interest from February 22, 2021 on the Resale of 20 Shares;

e)      Post-judgment Interest;

f)      Punitive damages;

g)      Disgorgement of all distributions paid by the Company under the Original Purchase Contract and the Resale Contract  as liquidated damages;

h)      Liquidated damages in the form of any amounts paid to Plaintiff to date;

i)      All costs incurred in this action;

j)      Attorney's fees;

k)      Such other and further relief as this Court may deem proper.

**AS TO THE COMPANY:**

a)      Rescission of the Original Purchase Contract and the Resale Contract;

b)      Purchase of the 40 Shares at their fair market value.

Respectfully submitted,

**NEWMAN LAW GROUP, LTD.**

Date: May 15, 2026                    By:  /s/ Janice W. Newman
                                      Janice W. Newman, Esq.
                                      Attorney I.D. No. 308490
                                      106 Jackdaw Alley
                                      Media, PA 19063
                                      484-444-2487
                                      jnewman@nlgltd.com

*Attorney for Plaintiff*